**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-cv-23882-JAL

JOHN SALERNO,

    Plaintiff,

v.

TOPDOC CLINICS MIAMI, LLC,

    Defendant.

_____/

**REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon Plaintiff John Salerno's Motion for Entry of Final Default Judgment. (ECF No. 10). This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Joan A. Lenard, United States District Judge for an evidentiary hearing and report and recommendation regarding the Motion for Entry of Final Default Judgment. (ECF No. 11). Defendant did not file a response, and the time to do so has passed. An evidentiary hearing was held on March 12, 2024. Upon consideration of the Motion, the evidence advanced in support thereof, the record as a whole, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED**.

**I.     BACKGROUND**

Plaintiff John Salerno ("Dr. Salerno") alleges that he developed The Dr. John Salerno IV Therapy Treatment Program (the "Program"), which is a vitamin treatment program for medical ailments consisting of naturally occurring supplements and vitamins. Plaintiff alleges that TopDoc

1

Clinics Miami, LLC ("TopDoc") is an integrated health and wellness clinic that solicited Dr. Salerno to utilize and incorporate Dr. Salerno's Program in its practice.

On December 21, 2021, Plaintiff alleges the Parties entered into the Intellectual Property License Agreement to license from Dr. Salerno the Program and other intellectual property to be implemented in Defendant's Miami office for a term of three years (the "Agreement").

Plaintiff alleges that, pursuant to their Agreement, TopDoc agreed to pay Dr. Salerno a license fee in the sum of $144,000.00, even if the agreement was terminated; training session fees at the rate of $8,500.00 per session, with a minimum of two training sessions per year; and consultation fees at the rate of $1,500.00 per day.  Plaintiff asserts that Dr. Salerno provided six training sessions, for which TopDoc was responsible to pay Plaintiff in the amount of $51,000.00. Dr. Salerno alleges TopDoc refused to pay the license fee or the training session fees in violation of the Agreement.

Plaintiff further alleges that, in December of 2021, Dr. Salerno provided TopDoc with a body sculpting machine for a fee of $4,995.00 per month.[1]  Plaintiff alleges that Defendant TopDoc utilized the machine for six months, but refused to pay the rental fee.

On October 11, 2023, Plaintiff initiated the instant action against TopDoc asserting claims of breach of contract, breach of covenant of good faith and fair dealings, and unjust enrichment. (ECF No. 1).  TopDoc was served with the Summons and Complaint on October 27, 2023, (ECF No. 5), and failed to respond.  After TopDoc failed to appear, Plaintiff moved for entry of default, (ECF No. 7), which the Clerk of Court subsequently entered on January 10, 2024.  (ECF No. 8). Plaintiff now moves for entry of final default judgment against TopDoc.  (ECF No. 10).  The referral of the Motion to the undersigned requested a hearing to determine the identity/name and

---

[1] Though the Motion states the monthly rental charges for the body sculpting machine was $5,000.00 per month, Plaintiff testified at the hearing that the monthly rent charged was $4,995.00 instead.

title of the Licensor to the Agreement and the enforceability of the alleged verbal agreement for the body sculpting machine.

On March 12, 2024, the undersigned held an evidentiary hearing.[2] At that hearing, Dr. Salerno testified that he is the Licensor referenced in the Agreement, and it was an oversight that his name was not included on the first page of the Agreement.[3] Dr. Salerno testified that it is his signature found on the Agreement for the Licensor. Dr. Salerno testified that the Agreement pertained solely to his licensed Program and other intellectual property, and did not include rental of any equipment.

Dr. Salerno testified that TopDoc requested to finance the body sculpting machine in Dr. Salerno's possession and had promised to pay its monthly finance fee of $4,995.00 per month. Dr. Salerno testified that this equipment was not used for executing the Program and other intellectual property TopDoc had licensed from Dr. Salerno. Rather, Dr. Salerno testified that TopDoc requested to rent the equipment because TopDoc has a facility that offers spa treatments and desired to include in their services the treatment offered by Dr. Salerno's body sculpting machine.

Dr. Salerno testified that he sent the equipment to TopDoc pursuant to that verbal agreement, but after six months of non-payment Dr. Salerno reclaimed the equipment. Dr. Salerno testified that, though he made the monthly payments for the equipment, he never received

---

[2] Defendant received service of the Motion and notice of the hearing through the Court's CM/ECF system. And, prior to the hearing, Plaintiff's counsel mailed the Zoom instructions for the hearing to Defendant. (ECF No. 14).

[3] Dr. Salerno testified virtually for the instant proceedings. Under Federal Rule of Civil Procedure 43, "the district court [has] 'discretion to allow live testimony by video for good cause in compelling circumstances and with appropriate safeguards.'" *Toland v. Phoenix Ins.*, 855 F. App'x 486, 491 (11th Cir. 2021). Dr. Salerno testified that if he had been required to appear in person for the hearing that he would not only have incurred loss of revenue from his active family medicine practice but would have also incurred the costs to travel and stay in our District. The Court finds that Plaintiff demonstrated good cause and compelling circumstances to allow him to testify without physically appearing in the courtroom. Moreover, the undersigned confirmed that Plaintiff was testifying alone in a separate room; Dr. Salerno maneuvered his video camera so as to display the entire room from which he was testifying. Dr. Salerno was instructed to turn off his cellphone during his testimony, the only other electronic available to him other than the device he was using to testify. Dr. Salerno confirmed he had no notes or other documents with him for his testimony.

payments from TopDoc.

As of the date of this Report and Recommendations, TopDoc has not responded to the Complaint, the Motion, nor has it made any other filings in this case. Nor has an attorney made an appearance on its behalf.

## II.     LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). "[E]ntry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)).

Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *Surtain*, 789 F.3d at 1245. Thus, before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint (which are taken as true due to the default) state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted).

### III. DISCUSSION

With the foregoing in mind, the Court turns to the allegations in the Complaint and the Agreement at issue. Plaintiff moves for entry of a default judgment on his claims for breach of contract and unjust enrichment. The Court will first address TopDoc's liability to Plaintiff for purposes of entering final default judgment and then turn to ascertain the proper damages and fees award.

#### A. Claims

Plaintiff seeks a default judgment for his claims against Defendant: breach of contract under Florida common law ("Count I"); and unjust enrichment under Florida common law ("Count III").

##### 1. Breach of Contract

Plaintiff asserts that Defendant breached an enforceable contract (the Intellectual Property License Agreement) with Plaintiff whereby Defendant agreed to pay Plaintiff a license fee of $144,000.00 for the Program and other intellectual property, and fees at the rate of $8,500.00 per training session conducted. (ECF No. 10 at 14, 23).[4] Plaintiff asserts he has not received any payments from TopDoc for the license fee or for the training sessions provided.

To establish a claim for breach of contract, Plaintiff must show that: (1) there was a valid contract; (2) that there was a material breach of that contract; and (3) that Plaintiff sustained damages as a result of that breach. *Regal Nails, Salon & SPA, LLC v. Ha*, No. 20-14388-CIV, 2022 WL 209189, at *3 (S.D. Fla. Jan. 5, 2022), *report and recommendation adopted*, No. 20-14388-CIV, 2022 WL 204743 (S.D. Fla. Jan. 24, 2022); *Rollins, Inc. v. Butland*, 951 So. 2d 860,

---

[4] Citations to documents within the Court's case management and electronic case filing system (CM/ECF) refer to the pagination assigned by CM/ECF to a document (*i.e.*, the page number assigned in the blue text across the top of the PDF) and not to a document's internal pagination. References to the instant proceeding are notated as "ECF No. __".

876 (Fla. 2d DCA 2006) (internal citations omitted) ("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach . . . . In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance.").

Plaintiff has stated a well-pleaded claim for breach of contract and has provided an affidavit and testimony sufficiently detailing each requisite element of that claim. Plaintiff had a valid contract with Defendant as evidenced by the written Intellectual Property License Agreement signed by both parties. (ECF No. 10 at 14–21). Dr. Salerno testified that it is his signature found on the Agreement and I credit that testimony.[5] Dr. Salerno has shown that Defendant breached the contract by attesting to the fact that he has not received any payments from TopDoc pursuant to the Agreement. (*Id.* at 10). TopDoc's failure to remit the required payments is further evidenced by Plaintiff's letter to Defendant seeking collections of the sums due. (ECF No. 1 at 20). Plaintiff has shown that Defendant's breach caused Plaintiff to incur damages in part relying on the liquidated damages clause, Section 5.2(d) of the Agreement, which establishes TopDoc guaranteed to pay the licensing fee of $144,000.00 in the event of a breach. Plaintiff further attests that he provided six training sessions without payment from TopDoc despite an agreement to be compensated at $8,500.00 per training session. (ECF No. 10 at 10, 23). Dr. Salerno has demonstrated that he suffered damages due to Defendant's failure to remit the required payments. Thus, Plaintiff provides facts sufficient to establish the requirements necessary to prevail on his breach of contract claim.

---

[5] Regarding Dr. Salerno's title, Dr. Salerno testified that he is self-employed as a licensed physician for Salerno Center of Complementary Medicine, and signed the Agreement on his own behalf.

### 2. Unjust Enrichment

Plaintiff contends that Dr. Salerno and TopDoc entered into an oral agreement for the rental of a body sculpting machine for a fee of $4,995.00 per month. Plaintiff alleges that TopDoc utilized the equipment for six months, but refused to pay the rental fee. Plaintiff asserts that TopDoc's rental of the equipment does not arise out of the Agreement between the Parties, and as such, his claim for unjust enrichment does not implicate the Agreement, and its prohibition on oral amendments does not bar this claim.

"In Florida, '[t]he essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

"Florida courts hold that 'a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'" *Alegra Motorsports v. Nano Pro Mt, LLC*, No. 8:22-CV-1325-CEH-SPF, 2023 WL 1971899, at *2 (M.D. Fla. Jan. 19, 2023), *report and recommendation adopted sub nom. Alegra Motorsports, LLC v. Nano Pro MT, LLC*, No. 8:22-CV-1325-CEH-SPF, 2023 WL 1967571 (M.D. Fla. Feb. 13, 2023).

Dr. Salerno testified that the body sculpting machine was not used for executing the licensed Program. Rather, Dr. Salerno testified that TopDoc requested to rent the equipment because TopDoc has a facility that offers spa treatments and desired to include in its services the treatment offered by Dr. Salerno's equipment. Dr. Salerno testified that, in requesting to rent the equipment, TopDoc promised to pay its monthly finance fee of $4,995.00 per month. Dr. Salerno testified that he shipped the equipment to TopDoc and it had possession of the equipment for a

period of six months. Dr. Salerno further testified that he did not receive the required monthly payment and, instead, he paid the monthly financing payment. After six months of non-payment, Dr. Salerno testified that he reclaimed the equipment from TopDoc.

"While as a general rule an action for unjust enrichment will not lie where the parties have an express contract governing the same subject matter, this general precept does not apply here because [the] unjust enrichment claim is not based on an alleged breach" of the Agreement. *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1369 (S.D. Fla. 2013) (citations omitted). Rather, the unjust enrichment claim hinges on a separate verbal rental agreement between the Parties pertaining to the body sculpting machine; equipment Dr. Salerno testified is not used to execute the licensed Program.

The undersigned finds that Plaintiff provides facts sufficient to establish the requirements necessary to prevail on an unjust enrichment claim against Defendant. As described above, Plaintiff conferred a benefit on to TopDoc by renting the equipment to TopDoc, and having it shipped to TopDoc's Miami office. TopDoc further accepted and retained the equipment for a period of six months without payment to Dr. Salerno, and it would be inequitable for Defendant to retain that benefit without the agreed-upon payment to Plaintiff. *See Gov't Emps. Ins. v. Sosa*, No. 8:21-CV-2556-VMC-JSS, 2022 WL 18661398, at *7 (M.D. Fla. Dec. 29, 2022), *report and recommendation adopted sub nom. Gov't Emps. Ins. v. Kalin*, No. 8:21-CV-2556-VMC-JSS, 2023 WL 240000 (M.D. Fla. Jan. 18, 2023).

**B.    Damages**

"If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount." *Fernandez de Cordoba v. Flores*, No. 17-20122-CV, 2018 WL 1830805, at *2 (S.D. Fla. Jan. 10, 2018), *report and*

*recommendation adopted sub nom. De Cordoba v. Flores*, No. 17-20122-CIV, 2018 WL 1811945 (S.D. Fla. Feb. 9, 2018). "Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested." *Id.* "Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law." *Regal Nails, Salon & SPA, LLC*, 2022 WL 209189, at *3 (quoting *Bowman v. Kingsland Dev., Inc.*, 432 So. 2d 660, 662 (Fla. 5th DCA 1983)). Damages are unliquidated if testimony is required to ascertain facts upon which to base a value judgment of the exact sum. *Id.* Costs of collection and attorney's fees are normally unliquidated. *Id.*

Plaintiff seeks damages in the amount of $224,970.00, which can be broken down as follows: $144,000.00 for the termination of the Agreement and $51,000.00 in training session fees for Count I, breach of contract; and $29,970.00[6] for rental of the equipment for Count III, unjust enrichment.

First, I recommend awarding $144,000.00 for the cost of liquidated damages for termination under the Agreement. Section 5.1 of Agreement provides that it may be terminated by the Licensor due to non-payment of any license fees by the Licensee. (ECF No. 10 at 16). Dr. Salerno submitted in support of the instant Motion an affidavit attesting that TopDoc failed to remit any payment of the license fee as required by the Agreement. (*Id.* at 10). Pursuant to section 5.2(d) of the Agreement, "[f]or whatever cause or reason for termination, the Licensor will be guaranteed the total amount of $144,000." (*Id.* at 17). As outlined in the Agreement, the Court agrees that Plaintiff is entitled to an amount of liquidated damages of $144,000.00.

---

[6] This amount is adjusted to account for Dr. Salerno's testimony that the rental of the equipment was $4,995.00, instead of $5,000.00 as described in the Motion.

9

Second, I recommend awarding $51,000.00 for the six training sessions Dr. Salerno provided to TopDoc. Pursuant to Exhibit A of the Agreement, TopDoc was required to pay Dr. Salerno $8,500.00 for any training sessions that Dr. Salerno provided with a minimum of two training sessions per year. (*Id.* at 23). In his affidavit, Dr. Salerno attests to the fact that he provided six training sessions, and did not receive any portion of the fees accrued. (*Id.* at 10). Thus, the record adequately reflects the basis for an award of $51,000.00 for the training fees provided by Dr. Salerno.

Third and finally, I recommend awarding $29,970.00 for the rental of the body sculpting machine by Dr. Salerno to TopDoc. At the evidentiary hearing, Dr. Salerno testified the basis for this fee, that he rented the equipment to TopDoc for a period of six months without receiving payment from TopDoc and then subsequently reclaimed the equipment due to lack of payment. The requested amount reflects six months of rent of the subject equipment. Dr. Salerno testified that, without payment from TopDoc, he was required to pay the fee of $4,995.00 per month during that time. Thus, the record adequately reflects the basis for the award of $29,970.00 for the unjust enrichment claim.

Based on the foregoing, I find that Plaintiff is entitled to a total award of $224,970.00 in damages.

### C. Attorney's Fees

In addition to damages, Plaintiff seeks to recover its attorney's fees expended in this litigation.

Section 18 of the Agreement provides that: "In the event that any action, suit, or other legal or administrative proceeding is instituted or commenced by either Party hereto against the other Party arising out of or related to this Agreement, the prevailing Party shall be entitled to recover

its reasonable attorneys' fees and court costs from the other Party." (ECF No. 10 at 19). Under Florida law, which governs the terms of the Agreement, reasonable attorney's fees are considered unliquidated damages and require a hearing to determine the amount of fees to be awarded. *See Williams v. Skylink Jets, Inc.*, 229 So. 3d 1275, 1279 (Fla. 4th DCA 2017); *Kalb v. Sail Condo. Ass'n*, 112 So. 3d 674, 676 (Fla. 3d DCA 2013). Plaintiff seeks $6,065.00 in attorney's fees.

In assessing the reasonableness of a request for attorney's fees, courts in the Eleventh Circuit apply the "lodestar" method to calculate an objective estimate of the value of an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 1350 n.2 (citing *Johnson*, 488 F.2d at 717–19).

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). Courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428. When a request for attorney's fees is unreasonably high, courts may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut. *Bivins*, 548 F.3d at 1350; *see also Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing a party's fee request with an across-the-board cut based upon billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351. Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

### 1. Reasonable Hourly Rate

In computing the lodestar, the first step is to determine the reasonable hourly rate, defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The Court is deemed an expert on the issue of hourly rates and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* (quoting *Norman*, 836 F.2d at 1301).

At the evidentiary hearing held before the undersigned, Plaintiff requested that the Court compensate Plaintiff's counsel, Andrew T. Lavin, a principal of the law firm Lavin Law Group, P.A., at an hourly rate of $575.00, and Scott E. Tuckman, an attorney at the same law firm, at an

12

hourly rate of $425.00. In support of these rates, Plaintiff submitted the Affidavit of Andrew T. Lavin as to attorney's fees and costs prior to the hearing. In view of the factors from *Johnson v. Georgia Highway Express, Inc.*, the Court finds that the requested rates are reasonable. The Court has considered the skill requisite to perform the legal services properly; the customary fee; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. The Court has also drawn on its expertise on the issue of hourly rates. *Loranger*, 10 F.3d at 781.

In Mr. Lavin's declaration filed in support of the Motion, Mr. Lavin attests to his and Mr. Tuckman's qualifications and experience. Mr. Lavin has been a licensed attorney by the State of Florida since 1978, and has engaged in the practice of civil commercial litigation and trial practice in state and federal courts in Florida. At the evidentiary hearing on the matter, Mr. Lavin represented that his primary area of practice is commercial and probate litigation, customarily complex litigation, and that he has served as an expert witness on attorney's fees for law firms several times in the span of his career. Mr. Tuckman has been licensed as an attorney in Florida since 1994. He represented at the hearing that he has been a licensed attorney since 1979 outside the state of Florida. Mr. Tuckman further represented that approximately five years ago he was awarded a rate of $375.00 in state court. Counsel's experience weighs in favor of finding the requested rates reasonable.

Accordingly, and without objection from Defendant, I find reasonable the requested hourly rates of $575.00 for Mr. Lavin and $425.00 for Mr. Tuckman.

### 2. Reasonable Hours Expended

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended in the litigation. The award must exclude compensation for hours "that

would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel*." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *Id.* at 428. Counsel must have reliable evidence to support hours that are claimed. *See Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988). If the fee applicant fails to exercise the required billing judgment, the Court is obligated to "[prune] out those [hours] that are 'excessive, redundant, or otherwise unnecessary.'" *Barnes*, 168 F.3d at 428.

In this case, Plaintiff seeks to recover $2,070.00 for 3.6 hours of time expended by Mr. Lavin, and $3,995.00 for 9.4 hours of time expended by Mr. Tuckman.

Plaintiff has supported his request for these hours by filing a spreadsheet listing time entries recorded by each timekeeper. (ECF No. 10 at 29–30). Upon review of the time entries, counsel's time entries reflect two attorneys performing similar work. While a client may retain multiple attorneys, the Court generally may not award time incurred by multiple attorneys without determining the unique, nonduplicative work performed by each. *Pena v. Facci of Merrick Park, Inc.*, No. 18-24296-CIV, 2020 WL 13390192, at *4 (S.D. Fla. Oct. 12, 2020). At the evidentiary hearing, Mr. Lavin represented that Mr. Tuckman was tasked with the more substantive projects of researching and drafting the relevant pleadings, while Mr. Lavin reviewed and edited Mr. Tuckman's submissions. Though two attorneys completed similarly described work, Mr. Lavin adequately explained the unique, nonduplicative work performed by each. Indeed, the division of labor among counsel demonstrates a conservative effort to bill at a lower hourly rate for the more time intensive projects. Thus, the undersigned finds that counsel billed the case efficiently.

14

Accordingly, the undersigned does not recommend any reduction in the number of hours sought, and finds the time evidenced in Plaintiff's submissions is reasonable.

### 3. Lodestar

Taking the reasonable number of hours worked by each timekeeper and multiplying those numbers by the reasonable hourly rate for each timekeeper, the Court determines that the lodestar amount totals $6,065.00, consisting of $2,070.00 for 3.6 hours of time expended by Mr. Lavin at the hourly rate of $575.00, and $3,995.00 for 9.4 hours of time expended by Mr. Tuckman at the hourly rate of $425.00.  The Court finds that this amount is reasonable and that no adjustment to the lodestar amount is warranted.  Accordingly, the Court will recommend that the District Court award attorney's fees in that amount.

### D. Costs

In addition to its fee request, Plaintiff seeks $457.00 in costs.  Section 18 of the Agreement provides that the prevailing Party shall be entitled to its reasonable court costs from the other Party. (ECF No. 10 at 19).  Because costs are available to Plaintiff based on the Agreement, the limitations placed on the availability of cost awards by 28 U.S.C. § 1920 do not apply.  *Arch Ins. v. GC Works, Inc.*, No. 12-21260-CIV, 2013 WL 12181371, at *6 (S.D. Fla. Feb. 4, 2013), *report and recommendation adopted*, No. 12-21260-CIV, 2013 WL 12181694 (S.D. Fla. Feb. 20, 2013).

The Affidavit submitted by Andrew T. Lavin, Esq. sets forth the costs in this action that were incurred for its filing and service of process fees.  (ECF No. 10 at 27).  The docket evidences $402.00 for the filing fee in initiating this action.  *See* Docket Text for ECF No. 1.  Plaintiff represents that he incurred $55.00 for service of process.  (ECF No. 10 at 31).  The docket further evidences that a summons was executed on TopDoc.  (ECF No. 5).  Since TopDoc failed to appear

or otherwise object to the requested costs, and noting no restriction on the costs available to Plaintiff under the Agreement, the undersigned recommends awarding Plaintiff $457.00 in costs.

## IV.     RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Entry of Final Default Judgment (ECF No. 10) be **GRANTED**; that a final default judgment be entered in Plaintiff's favor and that Plaintiff be **AWARDED** a total damages amount of $231,492.00. (comprised of $224,970.00 in damages, $6,065.00 in attorney's fees, and $457.00 in costs).

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Joan A. Lenard, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 30th day of April, 2024.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:     Honorable Joan A. Lenard
          Counsel of Record